# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____     :

PHI HEALTH, LLC,                                     :
                                                     :
      **Plaintiff,**                              :
v.                                                   :
                                                     :
AETNA LIFE INSURANCE COMPANY;                        :     **Civil Action No.: 3:25-cv-1812**
AETNA HEALTH, INC.;                                  :
INNOVATION HEALTH PLAN, INC.;                        :
BANNER|AETNA a/k/a BANNER HEALTH AND                 :
AETNA HEALTH PLAN, INC.;                             :
AMAZON, INC.; ARAMCO SHARED BENEFITS                 :
COMPANY; BRAZORIA COUNTY, TEXAS;                     :
BUCHANAN & EDWARDS, INC.;                            :
CARILION CLINIC; COADVANTAGE RESOURCES;              :
COOPER'S HAWK INTERMEDIATE HOLDING,                  :
LLC; CFGI, LLC / CORPORATE FINANCIAL                 :
GROUP, INC.; COSTCO WHOLESALE                        :
CORPORATION; COVA HEALTHAWARE;                       :
COVENTRY, VERNON & ROBERTS, LLC;                     :
CRESCENT PARK CORPORATION; CVS                       :
CORPORATION; DEMONTROND AUTOMOTIVE                   :
GROUP, INC.;                                         :
LAND O'FROST, INC.; LEARNING CARE GROUP,             :
INC.; ORORA PACKAGING SOLUTIONS; OWENS               :
CORNING; SCIENCELOGIC, INC; SCIENTIFIC               :
RESOURCES SOUTHWEST, INC.; SOCIETY FOR               :
WORLDWIDE INTERBANK FINANCIAL                        :
TELECOMMUNICATION, INC.;                             :
SONY CORPORATION OF AMERICA;                         :
STANFORD HEALTH CARE; STATE FARM                     :
INSURANCE COMPANIES; STATE TEACHERS                  :
RETIREMENT SYSTEM OF OHIO; SYSCO                      :
CORPORATION; SYSTEM HIGH CORPORATION;                :
TATA CONSULTANCY SERVICES; TAURUS                    :
INDUSTRIAL GROUP, LLC; THE DOW CHEMICAL              :
COMPANY; THE MITRE CORPORATION; UNITED               :
AIRLINES; VALLEY HEALTH SYSTEM; AND                  :
WESTCHESTER COUNTY HEALTH CARE                       :
CORPORATION,                                         :
                                                     :
      **Defendants.**                            :

---

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff PHI Health, LLC ("PHI") files this Original Complaint against the Aetna Parties as well as certain health benefits plans insured or administered by the Aetna Parties (the "Plans") and the plans' sponsors (the "Companies") for their failure to pay overdue awards issued pursuant to the No Surprises Act governing medical billing. The Aetna Parties, Plans, and Companies are defined in Part II, *infra*.

# I.

## **INTRODUCTION**

1.      The Aetna Parties, on behalf of themselves and the Plans and Companies, are violating the No Surprises Act ("NSA") and engaging in similar unfair and deceptive trade practices. The Aetna Parties devised a scheme to turn the NSA on its head. Rather than Independent Dispute Resolution ("IDR") proceedings being a quick, efficient way to resolve payment disputes between out-of-network providers of emergency services and health plans, the Aetna Parties, in concert with the Plans and Companies, use the NSA to further their crusade to deny, delay and underpay out-of-network providers of emergency medical services. After providers receive low initial payments from the Aetna Parties, providers must jump through the many hoops in the NSA to receive an award of fair compensation. And, once they receive an IDR award, the Aetna Parties simply do not pay it or delay payment far beyond the NSA's statutorily-mandated 30-day payment deadline and do not include interest on the late payment. This "low pay, late pay or no pay" scheme often results in providers not receiving fair compensation until many months and sometimes years after the emergency transport occurred, if they ever receive it at all.

2.      This scheme falls squarely within the type of unfair and deceptive trade practice prohibited by the State of Connecticut.   The Aetna Parties have late-paid nor not paid air

ambulance operators *many millions* of dollars in IDR Awards, including $896,850.33 owed to PHI. Defendants are ignoring federal law and violating Connecticut state law; they must be held accountable.

3.    PHI therefore applies, pursuant to the NSA, the Federal Arbitration Act, the Connecticut Unfair Trade Practices Act, and/or as a matter of declaratory and/or equitable relief for a judgment confirming the IDR awards and awarding Plaintiff for $896,850.33 (the "IDR Award Balances Owed"), in addition to attorneys' fees, costs, and interest. The persistent pattern of delay and denial additionally warrants the recovery of punitive damages from Defendants.

## II.

## PARTIES

### Plaintiff

4.    Plaintiff PHI Health, LLC is a limited liability company organized under the laws of the State of Louisiana and headquartered in Phoenix, Arizona.

### Aetna Parties

5.    Defendant Aetna Life Insurance Company ("ALIC") is organized under the laws of the State of Connecticut. ALIC serves as either the Plan Administrator or the Third-Party Administrator ("TPA") for health and welfare benefits plans (the "Plans," as defined herein) sponsored or administrated by the Companies (defined herein). ALIC is the authorized agent of every Plan and Company named in this Complaint. ALIC's receipt of notice of this lawsuit and the underlying arbitration was valid notice to all Plans and Companies, and ALIC's participation in the IDR process was participation on behalf of all Plans and Companies.

6.    Defendant Aetna Health, Inc. ("Aetna Health"), an ALIC affiliate, is a corporation formed under the laws of the State of Connecticut. Aetna Health is the issuer of one or more group

3

or individual health insurance policies that provided health insurance to patient(s) whose transport is at issue in this case, as identified in Exhibit A. Aetna Health is a "health insurance issuer, " as that term is used in the NSA. *See* 29 U.S.C. § 1191b(b)(2).[1]

7.      Defendant Innovation Health Plan, Inc. ("Innovation"), an ALIC affiliate, is a corporation formed under the laws of the State of Virginia. Innovation is the issuer of one or more group or individual health insurance policies that provided health insurance to patient(s) whose transport is at issue in this case, as identified in Exhibit A. Innovation is a "health insurance issuer," as that term is used in the NSA.[2] Innovation's website identifies it as an "affiliate" of various Aetna entities, including Aetna Life Insurance Company, meaning that Innovation has shared ownership with Aetna Life Insurance Company and other Aetna Parties. Based on this "affiliation" with a Connecticut company, Innovation is subject to the jurisdiction of Connecticut courts.

8.      Defendant Banner|Aetna a/k/a Banner Health and Aetna Health Plan, Inc. ("Banner|Aetna"), an ALIC affiliate, is a corporation formed under the laws of the State of Arizona. Banner|Aetna is the issuer of one or more group or individual health insurance policies that provided health insurance to patient(s) whose transport is at issue in this case, as identified in Exhibit A. Banner|Aetna is a "health insurance issuer," as that term is used in the NSA.[3]

---

[1] The NSA was codified in triplicate in the U.S. Code. The codification in 29 U.S.C. §§ 1185e and 1185f applies to group health plans governed by ERISA, and 29 U.S.C. § 1191b provides definitions for terms used in ERISA. The codification in 26 U.S.C. § 9817 applies to self-funded group health plans governed by Chapter 100 of the Internal Revenue Code. The codification in 42 U.S.C. § 300gg-112 applies to Exchange Act insurance plans that are governed by the Public Health Act ("PHA"). Because the majority of benefits plans in this case are governed by ERISA, the citations to the NSA will be from the ERISA codification. *See, e.g. Texas Med. Assn. v. United States Dept. of Health & Human Services,* 654 F.Supp.3d 575, 580 at n.3 (E.D.Tex. 2023) (citing to the PHSA only "for ease of reference").

[2] *Id.*

[3] *See* Note 2 *supra.*

Banner|Aetna's website identifies it as an "affiliate" of various Aetna entities, including Aetna Life Insurance Company, meaning that Banner|Aetna has shared ownership with Aetna Life Insurance Company and other Aetna Parties. Based on this "affiliation" with a Connecticut company, Banner|Aetna is subject to the jurisdiction of Connecticut courts.

9.     ALIC, Aetna Health, Innovation, and Banner|Aetna will collectively be referred to as the "Aetna Parties."

## Companies and Plans

10.     Defendant Amazon, Inc. ("Amazon") is a corporation headquartered in the State of Washington. Amazon serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Amazon Group Health & Welfare Plan ("Amazon Plan"). Amazon is thus a representative and fiduciary of the Amazon Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Amazon conducts continuous and substantial business in Connecticut, including maintaining distribution warehouses in Connecticut; selling products to Connecticut consumers; and maintaining regular commercial activities in the state. Amazon has therefore availed itself of the privileges of doing business in Connecticut.

11.     Defendant Aramco Shared Benefits Company ("Aramco") is a company headquartered in the State of Texas. Aramco serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Aramco U.S. Retiree Medical Payment Plan ("Aramco Plan"). Aramco is thus a representative and fiduciary of the Aramco Plan and is sued here in that capacity.

12.     Defendant Brazoria County, Texas, is a Texas government agency. Brazoria County serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents ("Brazoria County Plan"). Brazoria County is thus a representative and fiduciary of the Brazoria County Plan and is sued here in that capacity.

13.     Defendant Buchanan & Edwards, Inc. ("B&E") is a company headquartered in the State of Virginia. B&E serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Buchanan Edwards Health Plan ("B&E Plan"). B&E is thus a representative and fiduciary of the B&E Plan and is sued here in that capacity.

14.     Defendant Carilion Clinic ("Carilion") is a company headquartered in the State of Virginia. Carilion serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Carilion Clinic Welfare Benefit Plan ("Carilion Plan"). Carilion is thus a representative and fiduciary of the Carilion Plan and is sued here in that capacity.

15.     Defendant CFGI, LLC / Corporate Financial Group, Inc. ("CFGI") is a company headquartered in the State of Massachusetts. CFGI serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the CFGI, LLC Group Benefits Plan ("CFGI Plan"). CFGI is thus a representative and fiduciary of the CFGI Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, CFGI maintains an office in Stamford, Connecticut, and its website indicates not only having a "Connecticut practice" but

active business relationships with insurance and technology customers in Connecticut. CFGI has therefore availed itself of the privileges of doing business in Connecticut.

16.     Defendant Coadvantage Resources ("Coadvantage") is a corporation headquartered in the State of Florida. Coadvantage serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Coadvantage Resources, inc. Group Benefits Plan ("Coadvantage Plan"). Coadvantage is thus a representative and fiduciary of the Coadvantage Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Coadvantage provides services in Connecticut to Connecticut consumers. Coadvantage has therefore availed itself of the privileges of doing business in Connecticut.

17.     Defendant Cooper's Hawk Intermediate Holding, LLC ("Cooper's Hawk") is a company headquartered in the State of Illinois. Cooper's Hawk serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Cooper's Hawk Intermediate Holding Benefits Plan ("Cooper's Hawk Plan"). Cooper's Hawk is thus a representative and fiduciary of the Cooper's Hawk Plan and is sued here in that capacity.

18.     Defendant Costco Wholesale Corporation ("Costco") is a corporation headquartered in the State of Washington. Costco serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Costco Wholesale Corporation Employee Benefits Program II ("Costco Plan"). Costco is thus a representative and fiduciary of the Costco Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Costco conducts continuous and substantial business in Connecticut, including

7

maintaining multiple storefronts in Connecticut whereby it sells products to Connecticut consumers.

19.     Defendant Cova HealthAware ("COVA") is a benefits plan for employees of the Commonwealth of Virginia ("COVA Plan"). The Commonwealth of Virginia is thus a representative and fiduciary of the COVA Plan and is sued here in that capacity.

20.     Defendant Coventry, Vernon & Roberts, LLC ("Coventry") is a company headquartered in the State of Virginia. Coventry serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Coventry Vernon & Roberts Health Plan ("Coventry Plan"). Coventry is thus a representative and fiduciary of the Coventry Plan and is sued here in that capacity.

21.     Defendant Crescent Park Corporation ("Crescent") is a company headquartered in the State of Ohio. Crescent serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Crescent Park Employee Health Insurance Plan ("Crescent Plan"). Crescent is thus a representative and fiduciary of the Crescent Plan and is sued here in that capacity.

22.     Defendant CVS Caremark Corporation a/k/a CVS Health ("CVS") is a corporation headquartered in the State of Rhode Island. CVS serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents ("CVS Plan"). CVS is thus a representative and fiduciary of the CVS Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, CVS conducts continuous and substantial business in Connecticut, including maintaining multiple storefronts in Connecticut whereby it sells products to Connecticut consumers.

23.     Defendant DeMontrond Automotive Group, Inc. ("DeMontrond") is a company headquartered in the State of Texas. DeMontrond serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the DeMontrond Automotive Group, Inc. Employee Benefits Plan ("DeMontrond Plan"). DeMontrond is thus a representative and fiduciary of the DeMontrond Plan and is sued here in that capacity.

24.     Defendant Land O'Frost, Inc. ("Land O'Frost") is a company headquartered in the State of Indiana. Land O'Frost serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Land O'Frost Bargaining Unit Health and Welfare Plan ("Land O'Frost Plan"). Land O'Frost is thus a representative and fiduciary of the Land O'Frost Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Land O'Frost conducts continuous and substantial business in Connecticut, including inserting products into the stream of commerce in Connecticut and maintaining regular commercial activities in the state. It has therefore availed itself of the privileges of doing business in Connecticut.

25.     Defendant Learning Care Group, Inc. ("Learning Care") is a company headquartered in the State of Michigan. Learning Care serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Learning Care Group Employee Health Care Plan ("Learning Care Plan"). Learning Care is thus a representative and fiduciary of the Learning Care Plan and is sued here in that capacity.

26.     Defendant Orora Packaging Solutions ("Orora") is a company headquartered in the State of California. Orora serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Orora Packaging Solutions Welfare Benefits Plan ("Orora Plan"). Orora is thus a representative and fiduciary of the Orora Plan and is sued here in that capacity.

27.     Defendant Owens Corning Corporation ("Owens Corning") is a company headquartered in the State of Ohio. Owens Corning serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Owens Corning Health Care Benefits Plan ("Owens Corning Plan").  Owens Corning is thus a representative and fiduciary of the Owens Corning Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Owens Corning conducts continuous and substantial business in Connecticut, including inserting products into the stream of commerce in Connecticut and maintaining regular commercial activities in the state. It has therefore availed itself of the privileges of doing business in Connecticut.

28.     Defendant ScienceLogic, Inc. ("ScienceLogic") is a company headquartered in the State of Virginia. ScienceLogic serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the ScienceLogic Health and Welfare Benefits Plan ("ScienceLogic Plan"). ScienceLogic is thus a representative and fiduciary of the ScienceLogic Plan and is sued here in that capacity.

29.     Defendant Scientific Resources Southwest, Inc. ("Scientific Resources") is a company headquartered in the State of Texas. Scientific Resources serves as a plan sponsor for a

health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents, the "Scientific Resources Plan." Scientific Resources is thus a representative and fiduciary of the Scientific Resources Plan and is sued here in that capacity.

30.    Defendant Society for Worldwide Interbank Financial Telecommunication, Inc. ("SWIFT") is a company headquartered in the State of Virginia. SWIFT serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the SWIFT Health and Welfare Benefits Plan ("SWIFT Plan"). SWIFT is thus a representative and fiduciary of the SWIFT Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, SWIFT conducts business in Connecticut, including offering services that are integral to Connecticut's financial institutions, such as maintaining certified partners in this state and offering its network for use by Connecticut-based entities for international financial transactions. It has therefore availed itself of the privileges of doing business in Connecticut.

31.    Defendant Sony Corporation of America ("Sony") is a company headquartered in the State of New York. Sony serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Sony Corporation of America Health & Welfare Benefit Plan ("Sony Plan"). Sony is thus a representative and fiduciary of the Sony Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Sony conducts continuous and substantial business in Connecticut, including selling products to Connecticut consumers and maintaining regular commercial activities in the state. It has also sued and been sued in Connecticut courts, thereby availing itself of the privileges of doing business in Connecticut.

11

32.     Defendant Stanford Health Care ("Stanford") is a company headquartered in the State of California. Stanford serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Stanford Health Care Employee Health and Welfare Benefit Plan ("Stanford Plan"). Stanford is thus a representative and fiduciary of the Stanford Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, upon information and belief, Stanford conducts business in Connecticut through research and other scientific and educational collaborations in the State. It has therefore availed itself of the privileges of doing business in Connecticut.

33.     Defendant State Farm Insurance Companies ("State Farm") is a company headquartered in the State of Illinois. State Farm serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents, the "State Farm Plan." State Farm is thus a representative and fiduciary of the State Farm Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, State Farm conducts continuous and substantial business in Connecticut, including selling insurance products to Connecticut consumers and maintaining regular commercial activities in the state.

34.     Defendant Sysco Corporation ("Sysco") is a company headquartered in the State of Texas. Sysco serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents, called, upon information and belief, the Sysco Corporation Group Benefit Plan (the "Sysco Plan"). Sysco is thus a representative and fiduciary of the Sysco Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Sysco conducts continuous and substantial business

in Connecticut, including operating business locations in Connecticut and conducting wholesale food distribution throughout Connecticut, thereby maintaining regular commercial activities in the state.

35.     Defendant System High Corporation ("System High") is a company headquartered in the State of Virginia. System High serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents, called, upon information and belief, the System High Corporation Employee Benefits Plan (the "System High Plan"). System High is thus a representative and fiduciary of the System High Plan and is sued here in that capacity.

36.     Defendant Tata Consultancy Services ("Tata") is a company headquartered in Mumbai, India. Tata serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents, the "Tata Plan." Tata is thus a representative and fiduciary of the Tata Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Tata conducts continuous and substantial business in Connecticut, including operating business locations in Connecticut and maintaining a registered agent in the State of Connecticut, thereby maintaining regular commercial activities in the state.

37.     Defendant Taurus Industrial Group, LLC ("Taurus") is a company headquartered in the State of Texas. Taurus serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Taurus Industrial Group LLC Health & Welfare Plan ("Taurus Plan"). Taurus is thus a representative and fiduciary of the Taurus Plan and is sued here in that capacity.

38.     Defendant The Dow Chemical Company ("Dow") is a company headquartered in the State of Michigan. Dow serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the The Dow Chemical Company Medical Care Program ("Dow Plan"). Dow is thus a representative and fiduciary of the Dow Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Dow conducts continuous and substantial business in Connecticut, including inserting products into the stream of commerce in Connecticut and maintaining regular commercial activities in the state. It has also sued and been sued in Connecticut courts, thereby availing itself of the privileges of doing business in Connecticut.

39.     Defendant The Mitre Corporation ("Mitre") is a company headquartered in the State of Massachusetts. Mitre serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Mitre Corporation Health Care Plan. ("Mitre Plan"). Mitre is thus a representative and fiduciary of the Mitre Plan and is sued here in that capacity.

40.     Defendant United Airlines ("United") is a company headquartered in the State of Illinois. United serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the United Airlines Consolidated Welfare Benefit Plan ("United Plan"). United is thus a representative and fiduciary of the United Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, United conducts continuous and substantial business in Connecticut, including maintaining flight operations in Hartford, Connecticut. United has therefore availed itself of the privileges of doing business in Connecticut.

41.     Defendant Walmart, Inc. ("Walmart") is a company headquartered in the State of Arkansas. Walmart serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Walmart, Inc. Associates' Health and Welfare Plan ("Walmart Plan"). Walmart is thus a representative and fiduciary of the Walmart Plan and is sued here in that capacity. In addition to its contractual relationship with one or more Aetna Parties, Walmart conducts continuous and substantial business in Connecticut, including operating retail storefronts in Connecticut, thereby availing itself of the privileges of doing business in Connecticut.

42.     Defendant Westchester County Health Care Corporation ("Westchester County Health") is a company headquartered in the State of New York. Westchester County Health serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the WMC Health and Welfare Benefit Plan ("Westchester County Health Plan"). Westchester County Health is thus a representative and fiduciary of the Westchester County Health Plan and is sued here in that capacity.

43.     Amazon, Aramco, Brazoria County, B&E, Carilion Clinic, CFGI, Coadvantage Resources, , Cooper's Hawk, Costco, COVA, Coventry Vernon & Roberts, Crescent Park, CVS, Demontrond, Land O'Frost, Learning Care Group, Orora, Owens Corning, Scientific Resources, SWIFT, Sony, Stanford Health Care, Sony, Sysco, System High, Tata, Taurus, Dow, Mitre, United Airlines, Walmart, and Westchester County Health Care Group are each a "Company" and collectively the "Companies." Each benefits plan sponsored by a Company will be referred to as a "Plan" and collectively as the "Plans."

44.     Each Plan is a health and welfare benefits program or group health insurance policy to a patient whose transport is at issue in this case, as identified in Exhibit A.

45.     Each Plan is a "group health plan" as that term is used in the NSA. *See* 29 U.S.C. § 1185f(a)(3) (ERISA codification of the No Surprises Act, which requires the "group health plan" to pay the out-of-network provider the amount determined under the NSA's procedures).

46.     On information and belief, each of the Companies is ultimately responsible, under the applicable Plan documents, for making all payments that its sponsored Plan is required to make to or on behalf of the Plan's members.

47.     On information and belief, each Company and/or each Plan entered a contract with one or more of the Aetna Parties to insure and/or provide third-party administrative services on behalf of the Plan. Claims adjudication and payment on behalf of each Plan is performed in Connecticut.

48.     Companies, Plans, and the Aetna Parties will collectively be referred to as "Defendants."

## JURISDICTION AND VENUE

49.     This Court has federal question jurisdiction pursuant to the NSA, which includes a right to payment of IDR awards within thirty days of issuance. *See, e.g.,* 29 U.S.C. § 1185e(c)(5)(A); 28 U.S.C. § 1331.

50.     The Court has personal jurisdiction over ALIC and Aetna Health because these entities are incorporated in Connecticut and have their principal places of business in Connecticut. This Court has personal jurisdiction over Banner|Aetna and Innovation because they are affiliates of ALIC and Aetna Health; hold themselves out as members of the "Aetna family of companies"; and therefore conduct business in Connecticut, including the business giving rise to Plaintiff's

claims. In addition, on information and belief, as affiliates of ALIC and Aetna Health, many key management and claims decisions for Banner|Aetna and Innovation are made in Connecticut.

51.     Consistent with Conn. Gen. Stats. § 33-929(f)(1), Companies and the Plans are subject to the personal jurisdiction of courts in Connecticut because they entered contracts with one or more of the Aetna Parties to insure and/or administer claims covered and payable by the Plans with claims adjudication and payment performed in Connecticut. Therefore, these third-party administrator contracts between the Aetna Parties on one hand, and Plans and Companies on the other, are performed in whole or in part in Connecticut.

52.     Additional reasons supporting this Court's basis for personal jurisdiction over the Plans and Companies are alleged in Paragraphs 11-44 *supra*.

53.     Venue is proper under 28 U.S.C. § 1391(b)(2) because Plaintiff's claims arise from Defendants' non-payment of IDR awards. ALIC and Aetna Health have previously taken the position that this non-payment occurs in Connecticut, therefore making Connecticut the appropriate venue for claims arising from non-payment of IDR awards.[4]

## FACTUAL BACKGROUND

### A.     The Importance of PHI's Service.

54.     The air ambulance industry plays and integral role in the American healthcare system, and PHI provides an essential service for many Americans. Air ambulances serve as the only lifeline connecting critically ill and injured patients to healthcare, particularly in rural

---

[4] *See* Motion to Dismiss (Dkt. 12) filed in *Guardian Flight, LLC v. Aetna Life Insurance Company*, No. 24-00680 (D. Conn.) at p. 11. ("Here, the singular event or omission giving rise to Plaintiffs' complaint is Defendants' alleged failure to timely pay the awards. Accordingly, venue is proper in the District of Connecticut—the judicial district where Defendants reside based Plaintiffs' own allegations."). The U.S. District Court for the Southern District of Texas agreed and transferred this case to the District of Connecticut (Dkt. 64).

communities. They transport trauma, stroke, heart attack, and burn patients and other emergent cases requiring critical care. Today, at least one quarter of Americans (85 million) cannot access a Level 1 or 2 trauma center within an hour when emergency care is needed.[5]

55.     The delivery of on-demand, life-saving air ambulance services requires substantial investments in specialized aircraft, air bases, technology, personnel, and regulatory compliance systems. As recognized by a bi-partisan group of Senators and Representatives, "When seconds matter, air ambulances have proven to be the best way to care for patients in need."[6]

56.     The Aetna Parties' calculated and deliberate decision to ignore both their coverage obligations and the IDR process, while at the same time reaping the benefits of the services, on behalf of themselves and the Companies and Plans, is antithetical to the NSA or to the rational and proper functioning of the U.S. healthcare system.

**B.      Background on the No Surprises Act ("NSA").**

57.     The NSA became effective January 1, 2022. It is implemented and enforced by the combined efforts of the U.S. Departments of Labor, Health and Human Services, and the Treasury (the "Departments"), which together created a mandatory federal dispute resolution process to determine pricing for all out-of-network emergency air ambulance transports of patients who are covered by commercial health plans.

---

[5] https://www.cornellhealthcarereview.org/post/critical-lifelines-air-ambulances-in-rural-america

[6] Estes, Delbene, Bennet, Blackburn Introduce Legislation to Support Ambulances in Rural America, July 30, 2025,  https://estes.house.gov/news/documentsingle.aspx?DocumentID=7091.

58.    The NSA creates a federal obligation for group health plans and health insurers to pay out-of-network providers of air ambulance services. In total, the group health plans and health insurer must pay the applicable "out-of-network rate" due for the service, less any cost-sharing amount owed by the patient.

59.    Pursuant to the statute, a group health plan or insurer has 30 days from which the bill for a covered service is transmitted by the provider to pay or deny the claim. 29 U.S.C. § 1185e (b)(1)(C); 29 U.S.C. § 1185f(a)(3)(A). If initial payment is too low, the provider may initiate an "open negotiation period" to attempt to negotiate a higher amount.  29 U.S.C. § 1185e (c)(1)(A); 29 U.S.C. § 1185f (b)(1)(A). If the negotiations fail, the provider may initiate the IDR process. 29 U.S.C. § 1185e (c)(1)(B); 29 U.S.C. § 1185f (b)(1)(B).

60.    The IDR process is baseball-style arbitration. It requires each side to submit position statements and proposed offers of payment for the services at issue to a third-party IDR entity. 29 U.S.C. § 1185e (c)(5), 1185f(b)(5). The IDR entity considers both proposed offers and a number of statutory factors, and, and based on those factors, "select[s] one of the offers submitted . . . to be the amount of payment." *Id.*

61.    The IDR entity's "determination" is made "binding" by the NSA. The group health plan or insurer must make any additional "payment required" by the determination "directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185e ( c ) ( 5 ) ;  29 U.S.C. § 1185f(b)(5) (emphasis added).

**C.    PHI Filed Arbitration and Prevailed, Yet Defendants Refuse to Pay.**

62.    PHI followed these steps for each of the transports at issue herein. Defendants received the benefit of air ambulance transports for their beneficiaries during times of emergent

medical needs. In many situations, lives were saved or more serious conditions avoided (and thus the costs associated therewith).

63.     Each transport concerned a health plan that was administered and/or fully insured by one or more of the Aetna Parties.

64.     For each claim, one of the Aetna Parties sent PHI an "Explanation of Benefits" form (or "EOB") setting forth two initial low underpayments to PHI for the two service codes for the transport at issue and specified the patient's "cost sharing" amount. Because initial payments were deficient, PHI turned to the dispute resolution plan set forth in the NSA, as directed by the Aetna Parties in the EOB accompanying the claim (*representative EOB statement below*):

**Remarks:**
1 -  *The Federal No Surprises Act (NSA) applies to this claim. The Qualifying Payment Amount (QPA) was applied for purposes of calculating the participant's, beneficiary's, or enrollee's cost sharing. The QPA complies with the NSA. The member only owes their cost share shown on this notice. You are prohibited from billing the member more than their cost share. Under the NSA, if you don't accept the QPA and want to initiate an Open Negotiation, you have 30 business days from receipt of this notice to do so. You can submit a completed Open Negotiation request form to us via email at FederalINSA@Aetna.com. Our Provider Contact Center team can be reached at 1-888-632-3862 (1-888-MD AETNA) if you need details on initiating an Open Negotiation. You have 4 business days following the conclusion of the Open Negotiation period to initiate the Independent Dispute Resolution process.  [NAA]*

65.     First, PHI timely initiated the open negotiation process through email, as directed by the Aetna Parties. In most cases, PHI and the Aetna Parties exchanged offers during the "open negotiations process" but were ultimately unable to agree to a fair payment for the claims at issue.

66.     When open negotiations failed to occur or to result in an agreement to a fair payment for the claims at issue, at the Aetna Parties' invitation and pursuant to the NSA, PHI initiated IDR proceedings by submitting a Notice of Initiation through the federal IDR Portal for the transport and service codes at issue. Each IDR proceeding was assigned to a certified IDR entity for decision. Each proceeding resulted in an IDR determination and award that exceeded the sum of the patient's cost-sharing amount and the group health plan or health insurer's prior

payment(s) to PHI. Each proceeding therefore resulted in PHI being owed additional payment for the out-of-network transport.

67.    Those determinations are issued via Written Payment Determination Notices, which include the "IDR Awards," the results of which are summarized in the attached <u>Exhibit A</u>. <u>Exhibit A</u> shows the amount remaining due and owing to PHI, after accounting for any prior payments and the patients' cost-sharing responsibility. Attached as <u>Exhibit B</u> are the IDR determinations.[7]

68.    The Aetna Parties, on behalf of themselves and the Plans, frequently do not comply with the 30-day payment requirement. When the claim for services is finally paid, the Aetna Parties provide low reimbursement, hoping providers will find the IDR process too burdensome, or the provider will fail in one of the numerous steps in the IDR process and/or miss one of the NSA's strict deadlines. This forces providers to go through the IDR process, which is burdensome and costly, on every transport. Indeed, proof of Defendants' unfair payment practice is reflected by the fact that IDR entities on average have determined that the appropriate price for the transports at issue in this case is ***nearly 340% more*** than what Defendants initially pay.

69.    When all of these steps to delay and deny have failed, and PHI finally has a binding determination and award from an IDRE that it should be reasonably compensated for its services,

---

[7] An air ambulance bill has two line items: code A0431, which is a flat transport rate, and A0436, which is a variable rate depending upon the miles of the transport. The August 2022 Technical Guidance for Certified Independent Dispute Resolution Entities *required* each service code to be submitted as its own IDR proceeding. In 2023, a U.S. District Court in Texas found that this Guidance was wrong because it prohibits a provider from putting both codes in a single IDR proceeding. *Texas Med. Ass'n v. United States Dep't of Health & Human Servs.*, Med & Med GD (CCH) P 307,814 (E.D. Tex. Aug. 24, 2023), *aff'd in part, rev'd in part,* 120 F.4th 494 (5th Cir. 2024), *reh'g en banc granted, opinion vacated,* 138 F.4th 961 (5th Cir. 2025). Neither this opinion, nor any others, have found that an air ambulance operator is <u>required</u> to submit both line items as a single IDR proceeding.

Defendants simply ignore the IDR award. Some of the awards at issue in this proceeding with outstanding balances are more than 375 days past due. On the occasions when the Aetna Parties or the Plans it administers actually do pay, they unreasonably delay payment and do not include interest to account for the time value of the money that has been illegally withheld.

70.    The Aetna Parties know they are statutorily required to pay IDR awards within thirty days.  However, they do not invest in the compliance systems and personnel needed to meet their obligations under federal law, even now, nearly four (4) years after the adoption of the NSA. This is because the Aetna Parties know that they, their shareholders, and the health plans they serve, including the Plans and the Companies, profit from lack of compliance and violation of the mandatory payment obligations of the NSA. The Aetna Parties know that the longer they delay or deny payment, the more they earn from the interest and/or investment income generated for their fully insured business. And, with respect to self-funded health plans, the Aetna Parties know they must compete with other companies (and each other) for the administrative fees those plans generate. By delaying payment or not paying IDR awards, the Aetna Defendants are able to keep the health plans' claims costs arbitrarily low, thus incentivizing plans to stay with them or using the results to market their services to other health plans.

71.    The Aetna Parties' practice and policy of failure to timely pay IDR awards has become a widespread business practice. This business practice is evidenced by: 1) the numerous unpair and/or late paid IDR awards at issue in this lawsuit, and 2) the fact that other providers of emergency services are being subjected to the same widespread unfair business practices (See *Guardian Flight, LLC v. Aetna Life Insurance Company*, No. 24-00680).  Upon information and belief, many other emergency service providers are being subject to the same unfair business practices.

72.    The Companies and Plans are aware of the unfair trade practices of the Aetna Parties and reap the rewards through lower costs.

73.    PHI seeks to enforce the outstanding balances remaining on the IDR Awards. PHI seeks interest on all awards. PHI further seeks post-judgment interest, attorney's fees, costs, punitive damages and equitable relief.

## Count 1: Action for Payment of IDR Awards Under the NSA

## (NSA 29 U.S.C. § 1185e (c)(6); 29 U.S.C. § 1185f (b)(6)); 26 U.S.C. § 9817; and 42 U.S.C. § 300gg-112)

74.    PHI incorporates by reference the allegations of the preceding paragraphs.

75.    The NSA states that a determination of a certified IDR entity "**shall be binding upon the parties involved**" and that payment "shall be made directly to [PHI] **not later than 30 days after** the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185e (c)(6); 29 U.S.C. § 1185f(b)(6) (emphasis added).[8]

76.    More than 30 days have passed for all IDR Awards, and PHI has not received payment. Defendants have not challenged the IDR Awards; they simply did not pay them at all.

77.    The IDR Awards are valid arbitration awards that have not been vacated or set aside by any authority, and no grounds exists for vacating, modifying, or correcting the IDR Awards.

78.    Thus, the NSA requires Defendants to pay PHI the IDR Award Balance Owed for the transports at issue in this case and Plaintiff is entitled to have the IDR determinations enforced. The amounts owed on unpaid, partially paid, and late-paid awards plus prejudgment and post-judgment interest should be issued as a final judgment.

---

[8] And, as applicable, 26 U.S.C. § 9817 and 42 U.S.C. § 300gg-112.

## Count 2: Action for Payment of IDR Awards Under Federal Arbitration Act

## (9 U.S.C. §§ 1, *et seq.*)

79.     PHI incorporates by reference the allegations of the preceding paragraphs.

80.     The IDR Awards should be confirmed by judgment of this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 9.

81.     Defendants agreed to arbitrate these disputes, both expressly in communications with PHI and impliedly by their actions.

82.     The IDR process is mandated by federal law, and Defendants invited PHI to participate in the IDR process both through the language on the EOBs as well as in communications during open negotiations. The Aetna Parties, either on behalf of themselves or as agents of the Plans, also participated in IDR. Defendants therefore either expressly or implicitly participated in arbitration.

83.     The IDR Awards are valid arbitration awards that have not been vacated or set aside by any authority.

84.     No grounds exists for vacating, modifying, or correcting the IDR Awards.

85.     Confirmation is not "judicial review' but rather entry of the awards previously rendered. Confirmation of the IDR Awards is warranted here.

## Count 3: Declaratory and Injunctive Relief against All Defendants

86.     PHI incorporates by reference the allegations of the preceding paragraphs.

87.     An actual, concrete, and justiciable controversy exists among the Parties as it relates to Defendants' obligation to pay the IDR Award Balance Owed, which is thus suited for declaratory relief pursuant to 28 U.S.C. § 2201.

88.     Declaratory judgment is appropriate if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration.

89.     PHI seeks a declaration that IDR determinations are binding on Defendants. PHI further seeks a declaration that Defendants' conduct in refusing to pay IDR awards that have not been vacated in the limited manner permitted under the NSA is unlawful.

90.     As a result of the foregoing declarations, PHI will be protected from Defendants' continued refusal to pay PHI amounts it is owed for its services.

91.     Such declarations are proper and necessary under the existing circumstances in order that the Parties may ascertain their rights and obligations.

92.     The foregoing declarations, in whole or in part, would settle this ongoing payment controversy. Without a declaration concerning PHI's rights and interests relating to the services it provides and the enforcement of IDR awards, including payment of the IDR Award Balance Owed, PHI will continue to suffer damages on existing and future claims for services.

### Count 4: Violation of the Connecticut Unfair Trade Practices Act ("CUPTA") (against the "Aetna Parties")

93.     PHI incorporates by reference the allegations of the preceding paragraphs.

94.     PHI is a "person" within the meaning of Conn. Gen. Stats. § 42-110a. The Aetna Parties are engaged in "trade" and "commerce" within the meaning of Conn. Gen. Stats. § 42-110a, as they sell health insurance and administrative services from within the state.

95.     The Aetna Parties have used and employed unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce. These practices include, without limitation, making low initial payments that force providers to file IDR proceedings to obtain a fair payment, not paying IDR determinations within thirty days as required by federal law, not

including interest on late payments when made, and not investing in the compliance programs, systems and personnel needed to assure timely payment of IDR determinations.

96.     The Aetna Parties' acts and practices offend public policy and are unethical, oppressive and unscrupulous. They violate public policy embodied by the NSA, which requires payment of IDR determinations "directly to the nonparticipating provider not later than 30 days after the date on which" an IDR determination is made. 29 U.S.C. § 1185e(c)(6), 1185f(b)(6).

97.     These practices also constitute engaging in unfair settlement practices in violation of Conn. Gen. Stats. §38a-816(6)(F) for not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. The Aetna Parties' unreasonably low initial payments are unfair and not good faith attempts to effectuate equitable settlements.  During the Open Negotiation Period, the Aetna Parties are not attempting in good faith to effectuate prompt, fair and equitable settlements.  Once an IDR determination issues, and the precise amounts owed by the Aetna Parties (whether directly or as agent of the Plans) are unquestionably clear, the Aetna Parties do not promptly, fairly and equitably settle the claim by paying the amount in the award (less any patient cost-sharing and initial payment already made). The Aetna Parties' conduct have occurred with such frequency as to PHI and other providers of emergency healthcare services that it has become their regular business practice.

98.     PHI has suffered substantial injury and an ascertainable loss of money as a result of the Aetna Parties' acts or practices. PHI seeks recovery of damages, reasonable attorneys' fees, punitive damages, equitable relief and other appropriate relief as requested below. *See, e.g.,* Order denying Motion to Dismiss, *Guardian Flight, LLC v. Aetna Life Ins. Co.*, 3:24-cv-00680-MPS (D. Conn. May 14, 2025) (Dkt. 264).

### Count 5: Violation of CUTPA (Against Companies and Plan)

*(This count is asserted only to the extent the Plans or Sponsors are found to have knowingly participated in or directed the unfair insurance practices described herein.)*

99.    PHI incorporates by reference the allegations of the preceding paragraphs.

100.    Upon information and belief, the Companies and Plans knowingly participated in, directed, ratified, and benefitted from the Aetna Parties' scheme of systematically delaying, disputing, or refusing to pay valid IDR awards.

101.    Upon information and belief, such participation and ratification are evidenced by the Aetna Parties' role as third-party administrators acting at the direction of, and reporting payment performance to, the Plans and Companies, which ultimately approve or fund payments arising from NSA IDR determination.

102.    To the extent any Plan or Company Defendant exercised authority over, approved, or knowingly adopted the challenged conduct, that participation violates public policy embodied by the NSA, which requires payment of IDR determinations "directly to the nonparticipating provider not later than 30 days after the date on which" an IDR determination is made, and also constitute engaging in unfair settlement practices in violation of Conn. Gen. Stats. §38a-816(6)(F).

103.    PHI has suffered substantial injury and an ascertainable loss of money as a direct and proximate result of these practices. PHI seeks recovery of damages, reasonable attorneys' fees, punitive damages, equitable relief and other appropriate relief as requested below.

## Count 6: Civil Conspiracy (Against Aetna Parties, Companies and Plans)

*(This count is pleaded in the alternative and is expressly derivative of the unfair and deceptive trade practices alleged in Count 5)*

104.    PHI incorporates by reference the allegations of the preceding paragraphs.

105.    Upon information and belief, certain Companies and Plans on one hand, and one or more Aetna Parties on the other, combined, agreed, and acted in concert to engage in an unlawful scheme to delay, obstruct and underpay valid NSA IDR awards, and the other unfair and deceptive trade practices discussed above.

106.    The object of the conspiracy was to commit the unlawful acts described supra – namely, unfair and deceptive trade practices prohibited by CUTPA – and thereby reduce or avoid payment obligations owed to Plaintiff.

107.    In furtherance of this agreement, one or more Defendants performed overt acts, including issuing blanket denials of payment, making unreasonably low offers during open negotiations, withholding payments beyond statutory deadlines, and instructing personnel or vendors to disregard final IDR determinations.

108.    As a result of this conduct, PHI has suffered substantial injury and an ascertainable loss of money. PHI seeks to equally recover damages, reasonable attorneys' fees, punitive damages, equitable relief and other appropriate relief from the Defendants, as requested below.

## **JURY TRIAL DEMAND**

109.    PHI demands a trial by jury.

## **PRAYER**

WHEREFORE, PHI respectfully prays for judgment against Defendants for the following damages and relief:

    a.   Enforcement of all IDR Awards, including entering judgment for the IDR Award Balances Owed, as set forth in Exhibit A as required by federal law under the NSA or, alternatively, the FAA;

    b.   With respect to the portion of IDR awards unpaid as of the date of judgment, the amount outstanding on each award plus interest or the return on investment realized by Defendants on the amount owed for each IDR award from the 31st day after each decision was issued until the date of judgment;

c.   With respect to the portion of IDR awards paid late as of the date of judgment, interest or the return on investment realized by Defendants on the amount owed for each IDR award from the 31st day after each decision was issued until the date Plaintiffs received payment and then interest on the amount of unpaid interest or investment income that had accrued on the award at the time of payment until the date of judgment;

d.   Pre- and post- judgment interest;

e.   Attorney's fees, costs of suit, and punitive damages;

f.   Equitable relief requiring Defendants to comply with the NSA paying the IDR Award Balances Owed and by paying all future IDR awards within 30 days;

g.   Declare that IDR determinations entered in proceedings between PHI and any Defendant are final and binding unless vacated and must be paid within 30 days as required by the NSA; and

h.   Any and all additional legal or equitable relief to which PHI may be entitled, and this Court deems just and proper.


Dated: October 28, 2025                        _/s/Timothy G. Ronan_____
                                               Timothy G. Ronan (ct06310)
                                               Thomas S. Lambert (ct29561)
                                               PULLMAN & COMLEY LLC
                                               850 Main Street
                                               P.O. Box 7006
                                               Bridgeport, CT 06601-7006
                                               T: 203.330.2000
                                               F: 203.576.8888
                                               tronan@pullcom.com
                                               tlambert@pullcom.com